IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL CASUALTY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-1926-E |
| | § | |
| KT2 LLC D/B/A CHEETAH 1 EXPRESS, | § | |
| JONATHON HAROLD SWANSON, | § | |
| AND MARK DEMOND BROWN, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant KT2 LLC's Motion to Dismiss for Lack of Jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (Doc. No. 17). After careful consideration, for reasons that follow, the Court grants the motion.

### Background

This declaratory judgment action arises from a motor vehicle accident that occurred in Illinois in November of 2018. As alleged in Plaintiff National Casualty Company's live pleading, Defendant Mark Demond Brown was injured while "riding as a co-driver" in a semi-trailer owned by Defendant KT2 LLC, which does business as Cheetah 1 Express ("Cheetah"). At the time, Defendant Jonathon Harold Swanson was driving the semi-trailer. Both Swanson and Brown were employed by Cheetah as drivers. Swanson was acting in the course and scope of his employment when the accident occurred. In an underlying lawsuit in Harris County, Texas, Brown sued Cheetah and Swanson, alleging they are liable for the injuries he sustained in the accident.

Plaintiff is an insurance company organized under the laws of Ohio with its headquarters in Arizona. It issued a Commercial Auto Policy to Cheetah, which was in effect at the time of the accident. Plaintiff is providing Cheetah and Swanson with a defense in the underlying lawsuit under a reservation of rights. In this case, Plaintiff seeks a declaratory judgment that: 1) it has no duty to defend Cheetah and Swanson under the policy; 2) it has no duty to indemnify Cheetah, Swanson, or Brown for claims arising from the accident based on various policy exclusions; and 3) it has no obligations related to the accident under the Form MCS-90 Endorsement in the policy.

Plaintiff alleges in its complaint that Brown and Swanson are Texas citizens. In addition, Plaintiff alleges Cheetah is a limited liability company organized under Michigan law with its principal office in Michigan. Plaintiff asserts Cheetah has one member, Abbey Kizy who is a Michigan citizen. According to the complaint, Cheetah has established minimum contacts with Texas by sending and shipping goods into this State, thereby purposefully availing itself of the privilege of conducting business here. Plaintiff alleges that its claims arise from Cheetah's contacts with Texas because Brown was injured during Cheetah's shipment of goods to Texas, namely to Texas Wholesale Venture in Fort Worth. In addition, Plaintiff asserts that Cheetah is also subject to personal jurisdiction because its claims involve the negligent hiring and supervision of a Texas resident, Swanson.

Cheetah moves to dismiss Plaintiff's claims against it for lack of personal jurisdiction. It argues that this Court does not have either general or specific jurisdiction over it. As an alternative to dismissal, Cheetah requests that the Court transfer the case to the United States Court for the Eastern District of Michigan.

**Applicable Law**

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant, though it need only make a prima facie case at the Rule 12(b)(2) stage. *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 778 (5th Cir. 2018). The Court accepts the plaintiff's uncontroverted, nonconclusory factual allegations as true and resolves all controverted allegations in the plaintiff's favor. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, and other recognized methods of discovery. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

A federal court sitting in diversity in Texas may exercise personal jurisdiction over a foreign defendant if permitted by (1) the Texas long-arm statute, and (2) the due process clause of the Fourteenth Amendment. *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 249 (5th Cir. 2019). Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis. *Id.* Federal due process is satisfied if two requirements are met: (1) the nonresident purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the state; and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* at 249–50. The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 250 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). A defendant's "minimum contacts" may give rise to either general or specific jurisdiction. *Id.*

Supreme Court decisions have recognized two types of personal jurisdiction: "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of Ca.*, 137 S. Ct. 1773, 1779–80 (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State. *Id.* at 1780. But "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that State. *Id.* (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014)). General jurisdiction exists when a nonresident defendant's contacts with the forum state are continuous and systematic. *Sangha v. Navig8 ShipManagement Private, Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

General jurisdiction is difficult to establish and requires extensive contacts between a defendant and forum. *Id.* at 101–02. A corporation is "at home" in its place of incorporation and its principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). In an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State. *Id.* The general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts. *Daimler*, 571 U.S. at 139 n.20. It calls instead for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. *Id.* A corporation that operates in many places can scarcely be deemed at home in all of them. *Id.* Otherwise, "at home" would be synonymous with "doing business." *Id.*

4

Specific jurisdiction is very different. *Bristol-Myers*, 137 S. Ct. at 1780. For a court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Id.* In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Goodyear,* 564 U.S. at 919). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

**Analysis**

1. General Jurisdiction

Cheetah contends that it is a Michigan entity without any continuous and systematic contacts with Texas. It has attached the declaration of its managing member, Abbey Kizy, in support of its motion to dismiss. According to Kizy, Cheetah does not own any property or assets in the State. It has no offices, employees, bank accounts, or phone numbers in Texas. Kizy states that Brown and Swanson were independent contractors of Cheetah pursuant to written agreements they signed in Michigan. All insurance policy documents were executed by Cheetah in Michigan. Cheetah obtained the policy from an insurance agent in Ohio. Kizy's declaration states that Cheetah is not required to maintain, and does not maintain, a registered agent for service in Texas. In a supplemental declaration attached to Cheetah's reply in support of its motion, Kizy clarified that Cheetah contracts with Humphrey Transportation Compliance, LLC to fulfill various compliance duties. Kizy stated she "now understand[s] that Humphrey appoints registered agents on behalf of Cheetah."

Plaintiff responds that Cheetah operates in 49 states and advertises on its website that it "run[s] a lot of loads into and out of Texas border towns consisting of automotive parts, plastic

pellets and dunnage." According to Plaintiff, Cheetah has 34 primary routes, three of which originate in Texas, as well as 11 other "opportunity load routes" in Texas. Plaintiff argues that since one-tenth of Cheetah's routes originate in Texas, Cheetah has the requisite minimum contacts from a general jurisdiction perspective. Plaintiff further relies on the fact that Cheetah hires employees who live in Texas. It also cites the fact that Cheetah designated an agent for service of process in Texas pursuant to the Motor Carrier Act. *See* 49 U.S.C. § 13304 (motor carrier shall designate agent in each State in which it operates on whom process issued by court with subject matter jurisdiction may be served).

The Court notes that Plaintiff and Cheetah disagree about whether Brown and Swanson were employees or independent contractors. At this stage, the Court will resolve this, and any other factual disputes, in Plaintiff's favor. *See Carmona*, 924 F.3d at 193.

Plaintiff also asserts that when an interstate trucking company does business in a state and designates a registered agent under the Motor Carrier Act, the company consents to personal jurisdiction. Plaintiff cites *Ocepek v. Corporate Transport, Inc.*, a 1991 opinion from the Eighth Circuit Court of Appeals, for this proposition. 950 F.2d 556 (8th Cir. 1991). The Fifth Circuit has not specifically addressed this issue. It has, however, held that designation of an agent for service of process under the Texas Business Corporations Act (now the Business Organizations Code) without more does not subject a corporation to jurisdiction. *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182–83 (5th Cir. 1992). In addition, *Ocepek* predates the Supreme Court's opinion in *Daimler*. *See AM Trust v. UBS AG*, 681 F. App'x 587, 588 (9th Cir. 2017) ("It is an open question whether, after *Daimler*, a state may require a corporation to consent to general personal jurisdiction as a condition of registering to do business in the state."). The Court declines to follow *Ocepek*. *See Lyons v. Swift Transp. Co.*, No. 01-0209, 2001 WL 1153001, at *7 (E.D.

6

La. Sept. 26, 2001) (rejecting plaintiff's contention that defendant consented to personal jurisdiction when it designated agent for service of process under Motor Carrier Act); *Paz v. Castellini Co.*, No. B-07-036, 2007 WL 3342214, at *7 (S.D. Tex. Nov. 8, 2007) (same).

Cheetah is domiciled in Michigan. For general jurisdiction to exist in a forum other than Michigan, this would have to be an "exceptional case" such that Cheetah's corporate operations are so substantial and of such a nature as to render it at home in that forum. *See Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337–38 (5th Cir. 2020). As stated, designation of an agent for service of process in Texas, without more, does not constitute consent to the jurisdiction of Texas courts. *Wenche Siemer*, 966 F.2d at 182–83. The fact that 10% of Cheetah's routes originate in Texas does not show that it has substantial, continuous, and systematic contacts here. *See Poly Trucking, Inc. v. John R. Reed, Inc.*, No. 3:06-CV-1463-B, 2007 WL 9711743, at *4 (N.D. Tex. Mar. 12, 2007) (no general jurisdiction over out-of-state trucking company where 2.7% of nationwide hauls involved Texas). Plaintiff has not demonstrated that Cheetah's corporate contacts with Texas are of an exceptional nature such that it could be found at home here. *See Lyons*, 2001 WL 1153001, at *5 (in suit filed in Louisiana arising out of Mississippi accident, no general jurisdiction as to Arizona trucking company that had four employees with Louisiana driver's licenses, designated an agent under Motor Carrier Act, passed through Louisiana and occasionally delivered goods there).

2. Specific Jurisdiction

Cheetah also contends that it is not subject to specific personal jurisdiction as this lawsuit does not arise out of any contacts between Cheetah and Texas. It is a suit to interpret an insurance policy. Plaintiff does not allege that the insurance policy was formed or executed here. Cheetah

7

asserts that the policy was issued to it in Michigan, through an Ohio insurance agent. The accident involved in the underlying lawsuit occurred in Illinois.

Plaintiff contends that Cheetah is subject to specific jurisdiction. It points to the fact that Cheetah employed two Texas drivers. Plaintiff argues Cheetah targeted Texas by hiring Texas residents to drive its tractor-trailers on routes across the United States, including Texas. Plaintiff argues that Cheetah therefore understood that any accident involving these two drivers could lead to a lawsuit in Texas.

The Court cannot conclude that Cheetah's suit-related contacts are sufficient to subject it to jurisdiction in this forum. This is an insurance coverage dispute. This suit arises out of an insurance policy issued to a Michigan company in Michigan, purchased through an insurance agent in Ohio. The lawsuit is about whether there is insurance coverage for a vehicle accident that occurred in Illinois. Under the circumstances, the fact that the driver and passenger were from Texas and they were transporting goods to Texas are not substantial connections to this state.[1] Cheetah's Texas contacts are not linked to the procurement and enforcement of the National Casualty Company insurance policy. *Cf. Eastern Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 298 (5th Cir. 2020) (in Texas action by insurance company seeking declaratory judgment regarding its duty to defend or indemnify defendant, a New Jersey corporation, for incident at New Jersey rock quarry, defendant was subject to specific jurisdiction where defendant engaged, or authorized its Texas-based parent company to engage, Texas insurance broker to purchase policy in Texas).

---

[1] Plaintiff's live pleading alleges that Cheetah's tractor-trailer was on its way to Fort Worth when it crashed in Illinois. Plaintiff does not argue that fact in its response to the motion to dismiss.

Cheetah asks the Court to dismiss the case against it. Alternatively, it asks the Court to transfer the case to Michigan. Pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses, in the interest of justice, a court may transfer a civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). Cheetah asserts the individual defendants agreed to jurisdiction in Michigan. Kizy's declaration states that Swanson and Brown signed Commercial Motor Vehicle and Carriage Service Agreements in Michigan in which they agreed that any legal proceeding with respect to the agreements may be brought in Michigan.

In its response to Cheetah's motion, Plaintiff refuses to consider the possibility of transfer. It maintains the action should proceed in this Court as a matter of judicial efficiency and states that "[j]ustice does not oblige a transfer to Michigan." The decision to dismiss a case rather than transfer is within the sound discretion of the district court. *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987); *see also Hoffman v. Blaski*, 363 U.S. 335, 340–44 (1960) (before case with multiple defendants can be transferred, it must be determined that all defendants would have been subject to personal jurisdiction in transferee court at time case was originally filed). Given Plaintiff's complete opposition to transfer and the fact that Cheetah is not the only defendant, the Court will dismiss Plaintiff's claims against Cheetah without prejudice for lack of jurisdiction rather than transfer.

**SO ORDERED.**

Signed September 16, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE

9